[No. 4155.]

## FULTON INVESTMENT COMPANY V. SMITH.

1. FRAUDULENT CONVEYANCES—*Voluntary—Subsequent Creditors.* A voluntary conveyance, without consideration, is not presumptively fraudulent as to a subsequent creditor. The subsequent creditor assailing it must show fraudulent intent on the part of the grantor therein. (280.)

So, of one to whom the voluntary grantor becomes liable for a tort committed subsequent to the conveyance. (280.)

The mere pendency of a suit by a third person against the grantor and others, for an alleged tort, is not sufficient proof of a valid debt or claim, although the suit is subsequently settled by the grantor's co-defendant without defendant's knowledge or consent. (281.)

Competent proof of the verity and legality of the claim asserted in such suit must be produced. (282.)

The evidence examined and held not sufficient to sustain the allegation of fraudulent intent in the conveyance.*

2. EVIDENCE. As to this case the evidence of actual intent to defraud an alleged prior creditor must be so clear and indubitable as to exclude the presumption of good faith, or fail to sustain an allegation of fraud of which a subsequent creditor can take advantage.* (286.)

3. —— *Conveyance to a Corporation for its Stock,* is sanctioned by statute, and is·not voluntary or without consideration. (281.)

4. —— *Trust for Benefit of Grantor.* Section 2665 of the Revised Statutes applies only to transfers of chattel property, and avoids these only as to existing creditors. (284.)

5. EVIDENCE—*Presumptions.* The settlement of an action by the defendant, of itself raises no presumption that the demand asserted therein is a just one.* (283.)

6. APPEALS AND ERROR—*Presumptions.* Presumed that the trial judge did not consider incompetent testimony. (283.)

7. —— *General Findings—Construction.* A general finding will not be interpreted as declaring that of which there is no evidence. (283.)

*Syllabus by KING, J.

*Error to Jefferson District Court.* HON. H. S. CLASS, Judge.

MR. EDWIN H. PARK, for plaintiff in error.

MESSRS. CRUMP & ALLEN, for defendant in error.

KING, J., delivered the opinion of the court.

Action by Mary Smith to have cancelled, as fraudulent and void, a certain deed of real property standing in the name of The Fulton Investment Company, plaintiff in error,

and to have the title thereto adjudged to be in William A. Trogler, in order to subject it to execution on a judgment in favor of said Smith against said Trogler.

On the 11th day of April, 1912, plaintiff Smith obtained a judgment in the sum of $3,000 against said Trogler on a cause of action for tort, said to have been committed on or about August 9, 1910, upon which an execution, directed to the sheriff of Jefferson County, was issued and levied upon 800 acres of land, with water rights, situate in said county, as the property of the judgment debtor Trogler. March 10, 1910, or more than two years before the rendition of this judgment, and about five months before the tort upon which it was predicated was committed, the said real estate, alleged in the complaint herein to have been worth $50,000 or more, together with other property, was conveyed by Trogler to The Fulton Investment Company, and at all times since the record title thereto has been in said company. This action to have the deed from Trogler to the investment company cancelled is predicated on the allegation that the conveyance in question was purely voluntary, without consideration, and made with the intention to injure, delay and defraud the grantor's creditor,s existing and subsequent, especially one A. J. Ward, alleged to have been an existing creditor at the time of the conveyance; and upon the further allegation that the conveyance was made in trust for the grantor. By the decree of the court the deed was set aside, and Trogler was adjudged to be the owner of the property levied on.

1. The plaintiff was a subsequent creditor, whether her standing as such be regarded as dating from the rendition of her judgment or of the commission of the tort (malicious prosecution); therefore, as to plaintiff, the conveyance, even if voluntary and without consideration, and for that reason void as against then existing creditors, if attacked by them, is not presumptively fraudulent or void when attacked by her; but plaintiff must show, and the court

must find, fraud in fact, and fraudulent intent on the part of the grantor of which the plaintiff may take advantage. *Wallace v. Penfield,* 106 U. S., 260, 27 L. Ed., 147, 1 Sup. Ct., 216; *Moore v. Page,* 111 U. S., 117, 28 L. Ed., 373, 4 Sup. Ct., 488; *Phillips v. Wooster,* 36 N. Y., 412; *Carpenter v. Carpenter,* 27 N. J. Eq., 503; *Washington Nat. Bk. v. Beatty,* 77 N. J. Eq., 252, 70 Atl., 442, 140 Am. St. Rep., 555. But the conveyance was not purely voluntary or without consideration. The property was conveyed to The Fulton Investment Company in consideration of the issuance of its capital stock. A transaction of that kind is sanctioned by statute; such consideration is a valuable consideration. *Homestead Mining Co. v. Reynolds,* 30 Colo., 330, 335, 70 Pac., 422. Under the statute, capital stock of a corporation is regarded as money or its equivalent. *Robinson v. Canal Co.,* 2 Colo. App., 17, 27, 29 Pac., 750. *Prima facie,* the conveyance was *bona fide,* and for a valuable and lawful consideration. From the time of the transfer the corporation took, and thereafter maintained, exclusive possession of and dominion over the property. This was conceded by counsel for plaintiff on the trial, who stated that the only contention was as to the validity of the transfer.

There is not a scintilla of evidence, direct or circumstantial, nor anything from which a legitimate inference can be drawn, except the mere fact of the coveyance, that the deed was made for the purpose of hindering, delaying or defrauding the plaintiff herein, nor any other person who might subsequently become a creditor of the grantor, nor that any creditor of or other person having claims, debts or damages against the said grantor, plaintiff included, was in fact hindered, delayed or defrauded by reason of such conveyance. So far as disclosed by the record, Trogler was not, at the time of said conveyance, indebted to any person, with the exception of certain encumbrances on the said property which could not be affected by the conveyance. Nor were there any suits or claims against him, except the

claims of said Ward. At the time of said conveyance two suits were, and for two years had been, pending in the District Court of Jefferson County, in which A. J. Ward was plaintiff and William A. Trogler was defendant, based upon allegations of tort, and demanding damages in the sum of $15,000. In each of those cases answer was filed, denying liability, and all material allegations of the complaint, and in one of them Trogler filed cross-complaint or counter-claim for fraud alleged to have been practiced upon him by said Ward. The pendency of those two suits was the basis of the present action, so far as concerned the existence of creditors who could have been hindered, delayed or defrauded by the conveyance from Trogler to The Fulton Investment Company. In one of said suits, for the largest demand, David E. Trogler and John C. Trogler, sons of William A. Trogler, were co-defendants. The evidence shows that on or about the first day of April, 1912, the two suits were settled in full by David E. Trogler, by payment of $500, which settlement and payment was made while William A. Trogler was absent from the state, and without his knowledge or consent. There was no other proof of the verity or legality of the claim of said Ward against Trogler, and no proof that the tort was committed as therein alleged. It is settled law that whenever the rights of an alleged creditor depend upon the existence of prior debts or demands, he must show that there are or were such debts or lawful demands. *Homestead Mining Co. v. Reynolds, supra,* p. 336, and cases there cited; *Washington Nat. Bk. v. Beatty, supra,* Bump Fraudulent Conv., Sec. 297, and cases there cited. In *Washington Nat. Bk. v. Beatty, supra,* under circumstances strikingly similar to those at bar, the court held that a subsequent creditor who attacks a conveyance as made in fraud of a person who at the time of the conveyance was claiming damages based on the tort of the grantor must make legal proof of the verity and legality of said claim, citing *Baker v. Gilman,* 52 Barb. (N. Y.), 26.

With such ruling we are in entire accord.   In *Homestead*
*Mining Co. v. Reynolds, supra,* the court ruled that as
against the mining company to which Wall and Pursel had
conveyed real estate, the plaintiff Reynolds, who attacked
the deed as fraudulent, must prove the existence of the in-
debtedness at the time of the conveyance, although such
indebtedness had been merged into a judgment in favor of
plaintiff and against said Wall and Pursel.   We think there
is no question that it was incumbent on plaintiff herein,
by competent evidence, to prove the existence of a lawful
and valid claim on the part of Ward against Trogler, and,
failing so to do, the judgment cannot be sustained.   The
fact that David E. Trogler made settlement of the two suits
is not sufficient.   Either he or his father had a right to
purchase his peace from such litigation, and the mere fact
that either of them did so, of itself, raises no legal pre-
sumption that the claim was just or lawful.   Nor can a
settlement by the son be tortured into an admission by
the father that the claim was meritorious or lawful as
against him.   Moreover, keeping in mind the fact, estab-
lished by the proof, and not disputed, that the land was
paid for by stock, and the stock assigned so that David E.
and John C. Trogler received and held at least $10,000 of
the same in amount and value, and that those two sons
were co-defendants in the larger of the Ward suits, the
assertion that the father, with intent to prevent the col-
lection of a judgment, if one should be obtained, would
transfer his property to his sons and co-defendants, in
whose hands it would be none the less subject to execution
than in his, is manifestly too absurd to be credible or worthy
of consideration.

2.   Although the findings of the court were general,
and to the effect that all allegations of the complaint were
sustained, we cannot assume that the court found that the
deed to the real estate was made in trust for the grantor,
for there is no evidence to support such finding.   There was

no such reservation in the deed; no evidence of a secret agreement or understanding as to the real estate. The only evidence suggesting a trust agreement or understanding had reference entirely to the manipulation of the capital stock. After the capital stock had been issued to Trogler in payment for the deed to the land mentioned in the complaint, and other property, real and personal, but long prior to the alleged tort, he assigned to his wife and children all but one share of said stock. Upon receiving her stock, the wife made an endorsement thereof in blank, and delivered it to her son, David E., and left it, with other stock so assigned, in a safety deposit box, of which he had all the keys, but which bore the name of himself and father. The father, however, never exercised control over the box or the stock. The wife died December 23, 1911. One week prior thereto she assigned all her stock to her children, and the certificates theretofore held by her were cancelled and the stock re-issued in the name of the children. The evidence also tends to show that the stock issued to the children was, or was understood to be, assigned in blank and deposited in like manner as that of the wife. The statute of frauds provides that all deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against creditors existing of such person. Section 2665, R. S. '08. It will be observed, however, that this section applies to *existing* creditors only, and is limited to transfers of personal prporety. Under it there is no necessity of proving intent to defraud, but if the assignment is shown to be in trust for the grantor, it is, as to existing creditors, the same as if no transfer had been made. Upon the question of whether there is sufficient evidence to support a finding that the stock, or any of it, was assigned in trust for the grantor, we express no opinion; but even if it be conceded that the evidence was sufficient to sustain an inference of a trust for the grantor

as to the stock, that fact would not sustain a judgment setting aside the conveyance of the real estate; but if it were possible to sustain this judgment so as to subject either the real estate or the capital stock to execution for payment of the judgment against Trogler, it would be unconscionable, a reproach to the courts in the administration of justice, to permit the sacrifice of 800 acres of land, which plaintiff herself alleges to be worth $50,000, to satisfy an execution for $3,000, when, so far as the record shows, the capital stock could be as well and readily subjected to execution as could the real estate, and in sufficient quantities only to satisfy the judgment, with costs.

We have said that the record contains no competent evidence, direct or circumstantial, that the deed was made with actual intent to defraud creditors, existing or subsequent, except the mere fact that the conveyance was made, and that at the time it was made two suits were pending, in neither of which plaintiff herein was a party. There is no testimony of statements by Trogler that he would make, or admissions that he had made, the deed to defeat such suits or claims. On the contrary, there is the testimony of the Troglers, father and son, that the deed was not made with such intent or purpose; that the Ward claims were not discussed at the time of the transaction or while it was under consideration. The grantor testified that the corporation was formed, and the property conveyed to it by him for its capital stock, under advice of counsel, because of his advanced age, and his desire to retire from the active control of business, and to avoid the necessity of a will and its probate, and the administration of the estate, in the event of his death. These statements, both as to the purpose of the incorporation and deed to it, and that the Ward suits and claims did not induce it or enter into the discussion of it, were fully corroborated by two lawyers who had so advised Trogler, one of whom prepared the articles of incorporation. So far as disclosed by the evidence, the acts

of Trogler were perfectly consistent with good faith. We have often said that proof of fraud in its odious sense, *i. e.,* actual, intentional fraud, such as is here charged, and which if true amounted to a crime (sections 1846 and 1847, R. S. '08), must be strong and convincing, in order to sustain a verdict or a judgment. It must not be founded on mere suspicion. Applied to the facts of this case, we think that the evidence of intent to defraud Ward must be so clear, precise and indubitable as to exclude the presumption of good faith, or wholly fail. *D. & R. G. v. Sullivan,* 21 Colo., 302, 41 Pac., 501. The finding of the trial court is so manifestly against the weight of the evidence that this court is not bound to sustain it. *Thuringer v. Trafton,* 58 Colo. 250, 144 Pac., 866.

The judgment is reversed and the cause remanded, with directions to vacate and annul the levy of execution made on the real estate of defendant, and any sale thereunder, and for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

*On Petition for Rehearing:*

The statements made by counsel for defendant in error in their petition for rehearing, and in their printed brief, as well as oral argument in support thereof, indicate a conception of the views of this court so different from those expressed in the opinion or entertained by the court, and an understanding of the evidence so completely at variance with the record, that we feel constrained to take some notice thereof in denying the petition, proceeding on the assumption that counsel did not wilfully distort the plain meaning of the opinion, nor intentionally misstate the evidence.

1. We did not hold, as counsel state, that the Supreme Court, in *Homestead Mining Co. v. Reynolds,* 30 Colo., 330,

70 Pac., 442, decided that the issuance of capital stock in payment for property conveyed to the corporation was "a bar to an action to set aside the conveyance on the ground of fraud," but that it was a valuable consideration for such conveyance, and that a subsequent creditor, relying on prior debts to invalidate the deed, must prove the existence of such debts at the time of conveyance.

2. It is true that the complaint alleged, and the answer admitted, that the transfer to the corporation was voluntary, but plaintiff was not satisfied with the admission, and proceeded to prove quite conclusively that it was not without a valuable consideration. However, our decision is not predicated in the slightest degree on that distinction. We regard it as immaterial, as to plaintiff, a subsequent creditor, in the absence of proof of existing debts at the time of the conveyance, or of actual intent thereby to defeat the just claims of creditors, existing or subsequent. The law holds certain transfers void as to creditors, although made in good faith, and for want of a better term the term "constructive fraud" is often used as to such transfers. But the distinction between actual, intentional fraud, and so-called constructive fraud, although not important as to existing creditors, is vital when subsequent creditors attempt to set aside the transfer. Counsel for defendant in error ignore or refuse to admit that distinction.

3. We did not hold that sec. 2665, R. S. '08, was applicable to this case. We held that it was not, as that section applies to personal property only. *Eppich v. Blanchard*, 58 Colo. 139, 143 Pac. 1035. We considered the analogous common law rule as to real estate, that a transfer thereof to another, while the beneficial interest is retained by the grantor, is void as against creditors, to the extent at least of the interest so retained, but held that it is not applicable to the instant case, because there is no proof of the retention by the grantor of a beneficial interest in the real estate. The relation of trustee and *cestui que trust*, existing be-

tween a corporation and a stockholder, or the beneficial interest which every stockholder has in the assets of the corporation, do not *per se* bring the stockholder or the property conveyed by him to the corporation for stock, within the contemplation of the statute as to transfers of personal property, or the common law rule as to conveyances of real estate in trust for the grantor. To hold that it would create that relation would conflict with and nullify the statute. Sec. 851, R. S. '08; sec. 994, M. A. S. '12, as construed in *Homestead M. Co. v. Reynolds, supra.* Moreover, such trust relation would certainly not operate to defeat the transfer in favor of a creditor whose claims accrued after the stock so received had been assigned. Neither the statute nor the rule mentioned is founded on the conception of actual fraud in the transaction, but that the owner of the beneficial interest is the real owner of the property. Of course, if the transfer to the corporation is a mere subterfuge, and thereafter the grantor possesses, controls and deals with the property as he did before, the creditor is not affected thereby. Such are not the facts of the instant case, as we showed in the opinion.

4. Counsel assert that the statement in the opinion that plaintiff at the trial conceded that The Fulton Investment Company maintained exclusive possession of and dominion over the real estate is not correct. That concession or admission is made by counsel at folio 229 of the record.

5. We find no conflict in the evidence that Trogler did not know of or consent to the settlement made with Ward. The testimony of Mrs. Ward, that Keitel told her that Trogler asked him to negotiate for settlement, was objected to, was incompetent, and cannot create a conflict. Keitel was not shown to be Trogler's agent or representative. The contrary was shown. It must be presumed that the trial judge did not consider such incompetent testimony.

6. Counsel ridicule our reference to the fact that David Trogler and his brother, co-defendants with their

father in the Ward suits, were given and retained $10,000 worth of capital stock subject to execution if judgment had been obtained, as tending to controvert the legitimacy of an inference that the transfer was fraudulent.   At the risk of giving occasion for further ridicule, we here call attention to the proof that Ward offered to settle for $75 (f. 198) the claim upon which he sued for $15,000, and that arbiters appointed at the suggestion of David Trogler fixed the damages at only $150, but that W. A. Trogler denied all liability and refused to pay any thereof (f. 246 *et seq.*). That was the alleged debt, to avoid which it is said that Trogler conveyed $100,000 worth of property to the defendant company.   Under this evidence the suits savored of blackmail, precisely as Trogler treated them.

7.   Counsel say that this court had no right to assume that the entire 800 acre tract of land levied on was sold, or that any of it was sold.   It is true the printed record does not disclose that fact, but it was admitted in this court by counsel in his argument in the main case, and that plaintiffs had title through sheriff's deed.   The complaint states that the entire tract was levied on and had been advertised for sale by the sheriff.   The decree of the court annulled and set aside the conveyance to the entire tract.   Counsel now say that only 320 acres were sold.   It is not so grossly unconscionable to sell property worth $20,000, to satisfy a judgment for $3,000, as it would be to sacrifice property worth $50,000 for that purpose, but we regard it as unconscionable, nevertheless.   Plaintiff came into a court of equity and has not done equity.

8.   Counsel object because we say that the findings of the court were general.   The record so shows.   It is true that counsel incorporated into their brief what purports to be special findings of the court; but we do not regard the brief as a part of the record, any more than we do the large volume of other matter, occurring after trial, sought to be imported into the record for our consideration.   However,

we read and gave careful consideration to the alleged special findings, and accorded credit to such thereof as we believed were supported by competent evidence.

9.   Counsel contend that W. A. Trogler's testimony is contrary to evidence given by him before the Federal court. There is nothing in this record to show what his testimony in the Federal court was, and nothing to show that it conflicts.

Perceiving no reason for reopening the case, the petition for rehearing is denied.

Decided April 12, A. D. 1915.   Rehearing denied June 18, A. D. 1915.